IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| GWENDOLYN L. DIXON, | : | |
| | : | Civil No. 10-5703 (RBK) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter arises out of Attorney F. Michael Friedman's motion for $11,287.50 in attorney's fees pursuant to the Social Security Act, 42 U.S.C. § 406(b). For the reasons stated herein, the Court finds that Mr. Friedman is entitled to $5,643.75, or one-half his requested amount. Thus, Mr. Friedman's motion for attorney's fees will be **GRANTED** with modification of the sum requested.

**I.    FACTUAL BACKGROUND**

In July 2010, Mr. Friedman was appointed to represent Plaintiff Gwendolyn Dixon ("Plaintiff") before the Court on her appeal from the decision of the Commissioner of Social Security (the "Commissioner") denying her disability insurance benefits pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g). Mr. Friedman was successful in his representation of Plaintiff and the Court vacated the Commissioner's decision and remanded the matter to the Administrative Law Judge ("ALJ"). On September 26, 2011, the

Court issued a remand opinion and separate order. See Dixon v. Astrue, 2011 WL 4478493, at *11, *13 (D.N.J. Sept. 26, 2011); Dixon v. Astrue, 2011 WL 4479056, at *1 (D.N.J. Sept. 26, 2011).

Subsequently, Mr. Friedman ceased representing Plaintiff due to an illness and referred the case to attorney Michael Brown for the next round of proceedings before the Social Security Administration (the "Administration"). The Administration approved Plaintiff's disability and found that she was entitled to $77,747.40 in back benefits, dating from April 2006

Following the remand by this Court, Mr. Friedman did not apply for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C § 2412. Instead, Mr. Friedman has filed the instant motion for attorney's fees under section 406(b) of the Act for the time he spent working on Plaintiff's appeal.

## II. DISCUSSION

Under section 406(b), "whenever a court renders a judgment favorable to a claimant . . . who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment." 42 U.S.C. § 406(b). The EAJA provides an alternative basis for the recovery of attorney's fees in non-tort civil actions against the United States, Taylor v. Heckler, 835 F.2d 1037, 1039 (3d Cir. 1987) ("Taylor II"), by making available funds to a prevailing claimant that she then remits to her attorney. See Astrue v. Ratliff, 560 U.S. 586, __ , 130 S. Ct. 2521, 2526 (2010).

In Social Security matters, the EAJA serves to encourage representation of individuals before the Administration who otherwise may not have been able to afford an attorney, Taylor v. Heckler, 608 F. Supp. 1255, 1256 (D.N.J. 1985) ("Taylor I"), and seeks to align the interests of

claimants and attorneys in the prosecution of Social Security litigation. See Taylor I, 608 F. Supp. at 1259 (stating that attorneys are highly encouraged to apply for EAJA funds because these funds tend to ameliorate the potential conflict of interest between attorneys and clients in Social Security matters); McKittrick v. Gardner, 387 F.2d 872, 874 (4th Cir. 1967) (stating that because contingent fee agreements are often based on back benefits due to the client, courts are wary of the potential for stall tactics from attorneys who stand to benefit from prolonged litigation; thus, the EAJA provides a statutory incentive to attorneys to seek speedy resolutions to Social Security benefits litigation by removing incentives for attorney procrastination).

If, in addition to EAJA funds, an attorney is awarded funds under section 406(b) of the Act, he or she may still receive EAJA funds, but the lesser amount of the two funds must be refunded to the claimant. See Gisbrecht v. Barnhardt, 535 U.S. 789, 796 (2002).

Following a final judgment by the District Court, attorneys have thirty days to apply for EAJA funds. 28 U.S.C. § 2412(d)(1)(B); final judgments include remand orders.[1] Pursuant to Federal Rule of Civil Procedure 58, every judgment must be set out in a separate document, such as an order.[2] If the judgment is not set out in a separate document, it is not considered final until 150 days have passed since judgment in the civil docket. Fed. R. Civ. P. 58. An order can qualify as a separate document where three requirements are met: "(1) the order must be self-contained and separate from the opinion; (2) the order must note the relief granted; and (3) the order must omit (or at least substantially omit) the District Court's reasons for disposing of the

---

[1] Remand orders will not constitute final judgments "where the [Administration] Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." Kadelsky v. Sullivan, 30 F.3d 399, 401 (3d Cir. 1994). These circumstances are not at issue in the present case.

[2] Throughout this opinion, the Court will refer to the Federal Rules of Civil Procedure simply as the "Rules."

3

parties' claims." In re Cendant Corp. Sec. Litig., 454 F.3d 235, 241 (3d Cir. 2006). If an order issuing a remand meets these qualifications, the thirty day EAJA period begins.

Courts will not award EAJA funds if they find that the United States was "substantially justified" in its position. The government has the burden of showing substantial justification, and must demonstrate more than that its position was "merely reasonable." Taylor II, 835 F.2d at 1041-42. Essentially, the Government's justification for its position must be "to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565-66 (1988); cf. Williams v. Astrue, 595 F. Supp. 2d 582, 586 (E.D. Pa. 2009) (government position must be significantly erroneous and have a significant impact on litigation to fail substantial justification test).

Following the Court's September 26, 2011, opinion and order remanding this matter to the ALJ, Mr. Friedman did not apply for attorney's fees under the EAJA. Instead, he filed the instant motion for attorney's fees under section 406(b) of the Act. He acknowledges that he should have filed under the EAJA, but offers several explanations for his failure to do so. First, he claims an illness prevented him from filing for his fees. Second, he states that he did not consider the remand order a final judgment, which is required before an EAJA application can be made. Finally, he asserts that he felt that the Administration's opposition to Plaintiff's disability claim was substantially justified, which would prevent the approval of EAJA funds. The Court now turns to Mr. Friedman's arguments in support of his motion.

    **A.**     **Mr. Friedman's Claim That He Was Too Ill To File For EAJA Fees**

Mr. Friedman's primary justification for failing to apply for EAJA funds is that he was ill and had to terminate representation of Plaintiff immediately after this Court issued its remand decision. Mr. Friedman has disclosed enough details of his illness to more than reassure the

Court that he could not continue the representation; he did not, however, completely cease practicing law during the period of his illness. In fact, Mr. Friedman admits that filing an application for EAJA funds was not enough of a priority with the limited amount of time he had for work. (Pet'r's Resp. Letter Br. 3).

Although the Court is sympathetic to Mr. Friedman's plight, it would run counter to the spirit of the EAJA to award the total requested attorney's fees out of Plaintiff's back benefits. It would, in effect, punish her for something completely beyond her control. One of the key motivations of the EAJA is to protect Social Security claimants from losing significant portions of their back benefits by having to pay their attorney out of that sum. It is clear that had Mr. Friedman filed for EAJA funds, Plaintiff would have had significantly less than $11,287.50 withdrawn from her back benefits under section 406(b) since she would have been refunded the lesser of the EAJA or section 406(b) awards. As to this justification, the interest in protecting Social Security claimants embodied in the EAJA outweighs Mr. Friedman's interest in recouping his full fee, despite his plainly unfortunate circumstances.

### B. Mr. Friedman's Claim That The Remand Was Not A Final Judgment

Mr. Friedman's second rationale for failing to apply for EAJA funds is that he did not consider the Court's remand a "final judgment," and therefore did not consider an application for EAJA fees appropriate. In making this argument, Mr. Friedman incorrectly interprets Rule 58 and Third Circuit law on what constitutes a final judgment. Mr. Friedman also overlooks the fact that the remand order in this matter satisfied the Cendant requirements: (1) the order was self-contained and separate from the opinion; (2) the order clearly stated the relief granted, which was that the Commissioner's decision was vacated and matter remanded to the ALJ; and (3) a

separate opinion listed the reasons for the remand.[3] Therefore, the remand was a final judgment as defined in the EAJA.

The Court finds that Mr. Friedman had thirty days from the date of the remand, or until October 26, 2011, to apply for EAJA fees. His misinterpretation of what is defined as a "final judgment" does not excuse his failure to apply.

### C. Mr. Friedman's Claim That the Government's Position was Substantially Justified

Mr. Friedman's final argument is that he had serious doubts as to whether a court could find that the Administration's position in opposing Plaintiff's benefits request was not 'substantially justified.' He may be correct in this assumption, but his assumption, without more, cannot justify his inaction. The Government, after all, has the burden of showing it was substantially justified in its opposition to the claimant. Also, the Government must demonstrate that its position was more than simply reasonable. As Mr. Friedman acknowledges, failing to factor in Plaintiff's depression and failing to correctly specify certain of Plaintiff's physical limitations when assessing her employment possibilities are not slight errors. (Pet'r's Br. 6). In any event, he had a responsibility to his client to at least file for EAJA fees in an attempt to lighten any potential financial burden she might face.

### D. Mr. Friedman's Attorney's Fees Award

Mr. Friedman is requesting his standard rate of $250 per hour for 45.15 hours of services performed, for a total of $11,287.50. The Administration concedes this is a reasonable rate and

---

[3] As discussed supra, none of the exceptions to the rule that remand orders constitute final judgments applies: (1) the case was not remanded because the Secretary requested a remand before answering the complaint, and (2) new evidence has not come to light that was not presented before the ALJ. See supra n. 1.

6

total sum, but objects to the extent that all funds awarded pursuant to section 406(b) will be deducted from back benefits that are otherwise intended for Plaintiff. (Def.'s Letter Br. 2). Had Mr. Friedman applied for EAJA funds, these funds would have been paid directly from the government with no financial impact on Plaintiff. Accordingly, the Administration contends that Mr. Friedman's attorney's fees should be reduced. Id.

Despite his failure to apply for EAJA funds, and the resulting potential loss of more of her back benefits, there is no indication of any animosity between Plaintiff and Mr. Friedman. (Pet'r's Resp. Letter Br. 4). Not only did Mr. Friedman discuss with Plaintiff the potential impact his section 406(b) application would have on her back benefits, he also instructed her as to her right to appeal and provided her with instructions on how to do so. Id. Furthermore, Mr. Friedman obtained a remand that ultimately led to an award of $77,747.40 in Social Security back benefits for Plaintiff, albeit the award was obtained by different counsel. On the whole, these facts militate in favor of awarding Mr. Friedman some recompense for his services. However, although his illness should be factored into the equation, his admission that filing for EAJA funds was not a high enough priority as compared to other tasks counsels against awarding to him his total requested sum.

The EAJA provides a maximum fee of $125 per hour. 28 U.S.C. § 2412(d)(2)(A). Multiplying that by the 45.15 hours Mr. Friedman spent on this matter while before this Court, we arrive at $5,643.75. Mr. Friedman is requesting compensation at his normal rate of $250 per hour, which means that he would have been entitled to another $5,643.75 from an award under section 406(b).

Under Gisbrecht, EAJA fees offset any fees awarded under 406(b), and the attorney must refund the lesser of the two totals to the client. 535 U.S. at 796. In this case, the two totals are

identical.  Had Mr. Friedman filed for EAJA and section 406(b) fees, and had he been awarded both, he would have received $11,287.50.  Half of this, or $5,643.75, would have been offset and returned to Plaintiff.  While this would have resulted in no net financial loss to Plaintiff, since the returned EAJA funds would cancel out the loss of the section 406(b) funds from her back benefits, the Court does not wish to deny some reward to Mr. Friedman for his success in obtaining a remand for his client.

Accordingly, based on the mandatory offset of EAJA fees from section 406(b) fees, and factoring in the apparently amicable relationship that still exists between Mr. Friedman and Plaintiff as well as the favorable outcome Plaintiff achieved on remand, Mr. Friedman will not receive payment based on his normal hourly rate, but instead will receive what he likely would have been granted under the EAJA had he applied.  Accordingly, Plaintiff will lose $5,643.75 from her back benefits, but will not lose double that amount.  Mr. Friedman will be awarded only half of what he would have received had his normal rate been assessed, but will not walk away without compensation despite failing to apply for EAJA funds.

## III. CONCLUSION

For the reasons stated above, Mr. Friedman is hereby awarded $5,643.75 in attorney's fees pursuant to 42 U.S.C. § 406(b)(1)(A).  Therefore, Mr. Friedman's motion for attorney's fees is **GRANTED** with modification of the sum requested.  The Court will issue an appropriate order.


Dated:  9/18/2013                                                                   /s/ Robert B. Kugler
                                                                                                ROBERT B. KUGLER
                                                                                                United States District Judge